**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| BELLWETHER COMMUNITY CREDIT UNION and ALCOA COMMUNITY FEDERAL CREDIT UNION, on behalf of themselves and all others similarly situated, | Case No. 1:17-cv-1102-WJM-STV |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| CHIPOTLE MEXICAN GRILL, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 2

III.    STANDARD OF REVIEW ................................................................................ 3

IV.     ARGUMENT ...................................................................................................... 3

    A.      The Economic Loss Rule Is Not Applicable to Plaintiffs' Negligence Claims ...... 3

        1.      Plaintiffs Adequately Allege Chipotle Owed a Legal Duty ....................... 4

        2.      The Alleged Common Law and Statutory Duties Are Independent of Any Claimed Contractual Duty .......................................................................... 7

        3.      Plaintiffs Have Suffered Property Damage ............................................. 11

    B.      Plaintiffs State a Claim for Negligence Per Se ................................................... 12

    C.      Plaintiffs State a Claim for Violation of the DTSA ............................................ 14

        1.      Plaintiffs' Payment Card Data Is Protectable As a Trade Secret ............. 14

        2.      Chipotle Misappropriated Plaintiffs' Payment Card Data ....................... 17

    D.      Plaintiffs Adequately Allege Claims for Violations of the State Consumer Protection Statutes ............................................................................................. 19

        1.      Bellwether Has Standing to Bring Claims for Violation of Consumer Protection Statutes Other Than the NHCPA ............................................. 19

        2.      Bellwether Adequately Alleges Chipotle Violated the NHCPA ............. 20

        3.      Bellwether Adequately Alleges Its Entitlement to Injunctive Relief and Restitution under California's UCL ......................................................... 21

        4.      FDUTPA Applies to Chipotle's In-State Misconduct that Rendered Bellwether's Computer Data Commercially Worthless .......................... 23

        5.      Chipotle Engaged in Consumer Fraud in Violation of Both the Maine and Vermont Consumer Protection Statutes .................................................... 24

        6.      Bellwether Adequately States a Claim under Chapter 93A ..................... 26

        7.      Alcoa Adequately Alleges an Unconscionable Trade Practice under the ADTPA .................................................................................................... 27

    E.      Plaintiffs State a Claim under the Declaratory Judgment Act ............................ 29

V.      CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. WPX Prod. Prods., LLC,*
    184 F. Supp. 3d 1150 (D.N.M. 2016) ......................................................................19

*Aggreko, LLC v. Barreto,*
    No. 1:16-cv-353, 2017 WL 963170 (D.N.D. Mar. 13, 2017) ..................................14

*AIG Aviation Ins. v. Avco Corp.,*
    709 F. Supp. 2d 1124 (D.N.M. 2010) .....................................................................11

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.,*
    771 F.3d 697 (10th Cir. 2014) ..................................................................................3

*Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.,*
    No. 99-185, 2000 WL 726789 (D. Ariz. Apr. 18, 2000) .........................................11

*Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1,*
    859 F.3d 1243 (10th Cir. 2017) .........................................................................21, 22

*Apex Oil Co., Inc. v. Jones Stephens Corp.,*
    881 F.3d 658 (8th Cir. 2018) ...................................................................................29

*Ascension Tech. Corp. v. McDonald Invs., Inc.,*
    327 F. Supp. 2d 271 (D. Vt. 2003)...........................................................................25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................................................3

*Bans Pasta, LLC v. Mirko Franchising LLC,*
    No. 7:13-cv-00360, 2014 WL 637762 (W.D. Va. Feb. 12, 2014) ...........................13

*Baptist Health v. Murphy,*
    226 S.W.3d 800 (Ark. 2006)....................................................................................28

*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.,*
    No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012).....................23, 24

*BRW, Inc. v. Dufficy & Sons, Inc.,*
    99 P.3d 66 (Colo. 2004)......................................................................................7, 10

*Burns v. Toyota Motor Sales, U.S.A., Inc.,*
    No. 2:14-CV-02208, 2015 WL 11117157 (W.D. Ark. Apr. 23, 2015) ..................28

*CCPS Transp., LLC v. Sloan,*
    611 Fed. Appx. 931 (10th Cir. 2015)......................................................................30

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,*
    918 N.E. 2d 36 (Mass. 2009) ..................................................................................12

*Dorestin v. Hollywood Imports, Inc.*,
   45 So. 3d 819 (Fla. Dist. Ct. App. 2010) ..............................................................24

*Ekberg v. Greene*,
   588 P.2d 375 (Colo. 1978) .....................................................................................6

*Elkins v. Microsoft Corp.*,
   817 A.2d 9 (Vt. 2002) ...........................................................................................25

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
   No. 11-10807, 2014 WL 304070 (D. Mass. Jan. 28, 2014)...................................27

*Fero v. Excellus Health Plain, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ..................................................................19

*First Choice Fed. Credit Union v. Wendy's Co.*,
   No. CV 16-506, slip op. (W.D. Pa. Feb. 13, 2017) *R&R adopted*, 2017 WL
   1190500 (W.D. Pa. Mar. 31, 2017)................................................................ *passim*

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972)...............................................................................................13

*FTC v. World Wide Factors, Ltd.*,
   882 F.2d 344 (9th Cir. 1989) ................................................................................13

*FTC v. Wyndham Worldwide Corp.*,
   10 F. Supp. 3d 602 (D.N.J. 2014) .........................................................................13

*FTC v. Wyndham Worldwide Corp.*,
   799 F.3d 236 (3d Cir. 2015)............................................................................13, 21

*Gas Prods. Corp. v. BTU Mktg., LLC*,
   No. 16-cv-02747, 2017 WL 4222619 (D. Colo. Sept. 22, 2017)..........................14

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
   No. 07cv157, 2007 WL 2345027 (S.D. Cal. Aug. 14, 2007) ................................23

*Glob. Tech Led, LLC v. Hilumz Int'l Corp.*,
   No. 2:15-cv-553, 2017 WL 588669 (M.D. Fla. Feb. 14, 2017).............................24

*Grace v. Apple Inc.*,
   No. 17-CV-00551, 2017 WL 3232464 (N.D. Cal. July 28, 2017)..........................22

*Guest-Tek Interactive Entm't Inc. v. Pullen*,
   731 F. Supp. 2d 80 (D. Mass. 2010) .....................................................................26

*Harvey Barnett, Inc. v. Shidler*,
   338 F.3d 1125 (10th Cir. 2003) .............................................................................15

*Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*,
   573 F.3d 947 (10th Cir. 2009) ...........................................................9, 10, 11, 12

*In re Actiq Sales & Mktg. Practices Litig.*,
 790 F. Supp. 2d 313 (E.D. Pa. 2011) ..................................................................26

*In re Anthem, Inc. Data Breach Litig.*,
 162 F. Supp. 3d 953 (N.D. Cal. 2016) ...............................................................23

*In re Anthem, Inc. Data Breach Litig.*,
 No. 15-MD-02617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ..................18, 22

*In re Arby's Restaurant Group Inc. Litig.*,
 No. 17-mi-55555, slip op. (N.D. Ga. Mar. 5, 2018) ........................................ *passim*

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
 495 F. Supp. 2d 1027 (N.D. Cal. 2007) ..............................................................25

*In re Department of Veterans Affairs (VA) Data Theft Litigation*,
 MDL No. 1796, 2007 WL 7621261 (D.D.C. Nov. 16, 2007)...............................19

*In re Flonase Antitrust Litig.*,
 692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................19

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
 No. 1:14-md-2583, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ................. *passim*

*In re Lithium Ion Batteries Antitrust Litig.*,
 No. 13-MD-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)...........................28

*In re Office of Pers. Mgmt. Data Sec. Breach Litig.*,
 MDL No. 2664, 2017 WL 4129193 (D.D.C. Sept. 19, 2017) ..............................18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
 64 F. Supp. 3d 1304 (D. Minn. 2014)....................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 582 F.3d 156 (1st Cir. 2009)................................................................................27

*In re TJX Cos. Retail Sec. Breach Litig.*,
 524 F. Supp. 2d 83 (D. Mass. 2007) ..............................................................12, 26

*In re TJX Cos. Retail Sec. Breach Litig.*,
 564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) ...........12

*In re Wellbutrin XL Antitrust Litig.*,
 260 F.R.D. 143 (E.D. Pa. 2009)...........................................................................19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 No. 16-MD-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................22

*Karhu v. Vital Pharms., Inc.*,
 No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ........................23

*Kewanee Oil Co. v. Bicron Corp.*,
 416 U.S. 470 (1974)............................................................................................18

*Kuryakyn Holdings, LLC v. Ciro, LLC*,
   242 F. Supp. 3d 789 (W.D. Wis. 2017) ...............................................14

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
   781 N.E. 2d 787 (Mass. 2003) ..............................................................26

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
   No. 10-cv-02868, 2013 WL 5437775 (D. Colo. Sept. 27, 2013).........15, 16

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994).................................................................................29

*Laughman v. Girtakovskis*,
   374 P.3d 504 (Colo. App. 2015) ..............................................................4

*Legacy Acad., Inc. v. Mamilove, LLC*,
   761 S.E. 2d 880 (Ga. Ct. App. 2014), *vacated on other grounds*, 777 S.E. 2d
   731 (Ga. Ct. App. 2015)...........................................................................13

*Lombard v. Colo. Outdoor Educ. Ctr., Inc.*,
   187 P.3d 565 (Colo. 2008).......................................................................13

*McDermott v. Midland Mgmt., Inc.*,
   997 F.2d 768 (10th Cir. 1993) ...................................................................7

*Miller v. People*,
   566 P.2d 1059 (Colo. 1977).....................................................................17

*Mounce v. CHSPSC, LLC*,
   No. 5:15-CV-05197, 2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) .....29

*MPVF Lexington Partners, LLC v. W/P/V/C, LLC*,
   No. 15-cv-0467-WJM-KMT, 2016 WL 8234667 (D. Colo. Sept. 13, 2016) .........30

*Musket Corp. v. Star Fuel of Okla., LLC*,
   606 Fed. Appx. 439 (10th Cir. 2015).......................................................18

*Nader v. Citron*,
   360 N.E. 2d 870 (Mass. 1977) .................................................................26

*Network Telecommc'ns, Inc. v. Boor-Crepeau*,
   790 P.2d 901 (Colo. App. 1990) ..............................................................14

*NMS Servs. Inc. v. Hartford*,
   62 Fed. Appx. 511 (4th Cir. 2003)...........................................................11

*Paquet v. Smith*,
   854 F. Supp. 2d 1003 (D. Colo. 2012) (Martinez, J.) ...............................9

*Pruitt v. Sw. Energy Co.*,
   No. 4:12-CV-00690, 2013 WL 588998 (E.D. Ark. Feb. 13, 2013)..........28

*Rhino Fund, LLLP v. Hutchins*,
  215 P.3d 1186 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008) ...........................................................................................................................9

*Rosales v. Citibank, Fed. Sav. Bk.*,
  133 F. Supp. 2d 1177 (N.D. Cal. 2001) ...............................................................23

*S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*,
  342 P.3d 868 (Colo. 2015).................................................................................7, 9

*Saturn Sys., Inc. v. Militare*,
  252 P.3d 516 (Colo. App. 2011) ...........................................................................15

*Savant Homes, Inc. v. Collins*,
  No. 13-cv-2049-WJM-MEH, 2015 WL 899302 (D. Colo. Feb. 27, 2015) ............30

*Se. Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*,
  439 F. Supp. 2d 831 (W.D. Tenn. 2006).............................................................11

*SELCO Community Credit Union v. Noodles & Co.*,
  No. 16-cv-02247, 2017 WL 3116335 (D. Colo. July 21, 2017) ..................7, 10, 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)...........................................................................................29

*Smit v. Anderson*,
  72 P.3d 369 (Colo. App. 2002) ..............................................................................7

*Smith v. Pizza Hut, Inc.*,
  No. 09-cv-01632, 2011 WL 2791331 (D. Colo. July 14, 2011) ...........................20

*Smith v. SEECO, Inc*,
  No. 4:14-CV-00435, 2017 WL 4570320 (E.D. Ark. Mar. 21, 2017) ....................29

*Smith v. Wm. Wrigley Jr. Co.*,
  663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...............................................................24

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  533 F.3d 162 (3d Cir. 2008)...............................................................................12

*Space Sys./Loral, LLC v. Orbital ATK, Inc.*,
  No. 4:17-cv-00025, 2018 WL 701280 (E.D. Va. Feb. 2, 2018) ...........................18

*State v. Moran*,
  151 N.H. 450 (2004) ......................................................................................20, 21

*Storagecraft Tech. Corp. v. Kirby*,
  744 F.3d 1183 (10th Cir. 2014) .....................................................................17, 18

*Sullivan v. Allstate Ins. Co.*,
  No. 5:09-cv-123, 2010 WL 3323726 (D. Vt. Aug. 3, 2010) .................................25

*Taco Bell, Inc. v. Lannon*,
    744 P.2d 43 (Colo. 1987) .................................................................................................5, 6

*Tandy v. City of Wichita*,
    380 F.3d 1277 (10th Cir. 2004) ........................................................................................21

*Teggerdine v. Speedway LLC*,
    No. 8:16-cv-3280-T-27TGW, 2017 WL 2105224 (M.D. Fla. May 12, 2017) ......................24

*Town of Alma v. AZCO Const., Inc.*,
    10 P.3d 1256 (Colo. 2000) ................................................................................................4

*Tracfone Wireless, Inc. v. Access Telecom, Inc.*,
    642 F. Supp. 2d 1354 (S.D. Fla. 2009) ...........................................................................24

*Tuchman v. Pell Rudman Tr. Co., N.A.*,
    245 F. Supp. 2d 1156 (D. Colo. 2003)................................................................................9

*U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*,
    358 F. Supp. 2d 1021 (D. Colo. 2005) ........................................................................10, 11

*United Blood Servs. v. Quintana*,
    827 P.2d 509 (Colo. 1992) .................................................................................................4

*United States v. Fisher-Otis Co., Inc.*,
    496 F.2d 1146 (10th Cir. 1974) ........................................................................................30

*United States v. La Cock*,
    366 F.3d 883 (10th Cir. 2004) .........................................................................................18

*Univ. of Denver v. Whitlock*,
    744 P.2d 54 (Colo. 1987) ..................................................................................................5

*Vanoven v. Chesapeake Energy Corp.*,
    No. 4:10CV0158, 2011 WL 1042251 (E.D. Ark. Mar. 22, 2011) .........................................29

*Wallace v. XTO Energy, Inc.*,
    No. 4:13-cv-00608, 2014 WL 4202536 (E.D. Ark. Aug. 22, 2014).......................................29

*Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*,
    No. 17 C 1136, 2017 WL 3235682 (N.D. Ill. July 31, 2017) .................................................15

## STATUTES, RULES & REGULATIONS

5 M.R.S.A. §§205-A, *et seq.*............................................................................1, 25, 26

§207.......................................................................................................................25

10 M.R.S.A. §1347-A.............................................................................................26

9 V.S.A. §§2451, *et seq.*......................................................................................2, 25

18 U.S.C. §1831, *et seq.*......................................................................... *passim*

§1836(b)(3) ..........................................................................................................18

§1839...............................................................................................................15, 17

Ark. Code Ann. §§4-88-101, *et seq.*..............................................................1, 28, 29

§4-110-102 ...........................................................................................................28

C.R.S. §7-74-102(4)...............................................................................................16

§18-5.5-101 ...........................................................................................................11

Cal. Bus. & Prof. Code §§17200, *et seq.*..........................................................1

§22578...................................................................................................................23

Cal. Civ. Code §1798.1..........................................................................................23

§§1798.81.5(a)(1) & (b)........................................................................................23

Federal Trade Commission Act ............................................................. *passim*

Fla. Stat. §§501.201, *et seq.*............................................................................1, 23, 24

Mass. Gen. Laws Ch. 93A, *et seq.*..................................................................1, 26, 28

N.H. Rev. Stat. §§358-A:1, *et seq.*................................................................2, 19, 20, 21

§359-C:2 ................................................................................................................21

Declaratory Judgment Act ...................................................................................30

Uniform Trade Secrets Act §1(4)(ii).....................................................................16

## OTHER AUTHORITIES

Restatement (Second) of Torts................................................................................7

Restatement (Third) of Unfair Competition ........................................................17

Plaintiffs Bellwether Community Credit Union ("Bellwether") and Alcoa Community Federal Credit Union ("Alcoa") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Chipotle Mexican Grill, Inc.'s ("Chipotle") Motion to Dismiss ("Motion").  ECF No. 57.[1]

## I.    INTRODUCTION

In March 2017, computer hackers accessed Chipotle's inadequately protected point of sale ("POS") systems and installed malware that infected over 2,200 Chipotle restaurants throughout the U.S. (the "Data Breach").  ¶¶1, 28-37.[2]  As a result, payment card data ("Payment Card Data") was compromised and used to make millions of fraudulent transactions.  ¶¶1, 34-38, 281.  Plaintiffs  and other financial institutions, which issued the compromised payment cards (¶35), have suffered property damage and financial losses in connection with replacing computer data, reimbursing consumers for fraudulent transactions, and reissuing compromised cards.  ¶¶7, 9, 10, 117-125.  Plaintiffs allege the Data Breach and Plaintiffs' injury were the foreseeable result of Chipotle's minimalistic data security measures, which were known within the company to be insufficient to protect against recognized threats.  ¶¶2-6, 19-108.  Plaintiffs bring this action to recover for injuries suffered as a result of Chipotle's negligence, negligence *per se*, violation of state consumer protection statutes,[3] and violation of the Defend Trade Secrets Act of 2016

---

[1]     Filed concurrently herewith is Plaintiffs' Motion to Strike Exhibits A-C Attached to Defendant's Motion to Dismiss.  *See* ECF Nos. 57-1 ("Ex. A"), 57-2, 57-3 ("Ex. C").

[2]     All "¶" or "¶¶" citations are to the Consolidated Amended Class Action Complaint ("Complaint"), filed on October 30, 2017.  ECF No. 44.

[3]     Ark. Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§4-88-101, *et seq*., Cal. Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200, *et seq*., Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§501.201, *et seq*., Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S.A. §§205-A, *et seq*., Mass. Consumer

("DTSA"), 18 U.S.C. §1831, *et seq.*, and also seek declaratory and equitable relief.

Chipotle seeks to dismiss Plaintiffs' claims, but its arguments lack merit. First, the economic loss rule does not bar Plaintiffs' negligence claims because Chipotle owed, and continues to owe, an independent duty to not create a foreseeable and unreasonable risk of harm to Plaintiffs. Chipotle's contrary arguments impermissibly rely on facts and documents not before the Court. The economic loss rule also does not apply because Plaintiffs have suffered property damage. Moreover, Section 5 of the Federal Trade Commission Act ("FTC Act") creates an additional independent duty that is a valid basis for Plaintiffs' negligence *per se* claim.

Second, Plaintiffs' Payment Card Data is protectable as a trade secret under the DTSA, which Chipotle misappropriated by improperly using and disclosing the data when it knew it had a duty to maintain its secrecy. Third, despite that Chipotle ignores Plaintiffs' allegations and misconstrues the relevant legal standards, Plaintiffs have standing and have adequately pled their consumer fraud claims. Finally, Plaintiffs allege Chipotle's data security problems are ongoing, and therefore they have adequately alleged a case or controversy under the Declaratory Judgment Act, an imminent risk of future harm, and entitlement to equitable relief. Chipotle's challenge to the accuracy of these allegations is not a basis for dismissal. Thus, the Motion should be denied.

## II.   STATEMENT OF FACTS

The Data Breach was an inevitable result of Chipotle's inadequate data security measures. ¶¶19-108. Despite the well-publicized threat of cyber-attacks targeting payment card data through inadequately protected POS systems and computer networks (¶¶2-6, 19-27),

---

Protection Act ("Chapter 93A"), Mass. Gen. Laws Ch. 93A, *et seq.*, N.H. Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. §§358-A:1, *et seq.*, and Vermont Consumer Fraud Act ("VCFA"), 9 V.S.A. §§2451, *et seq.* (the "State Consumer Protection Statutes").

Chipotle engaged in a number of actions that caused the Data Breach, including:  refusing to implement certain best practices, understaffing its information technology ("IT") department, refusing to upgrade security systems, explicit warnings about the vulnerability of its POS systems, lacking adequate antivirus and firewall protection and network segmentation that would have prevented the Data Breach, and not implementing other safety protocols that would have detected the Data Breach.  ¶¶32-108.  Chipotle also declined to upgrade its payment systems to use EMV, which would have prevented the Data Breach.  ¶¶90-94.  Moreover, by failing to timely identify the Data Breach, Chipotle exacerbated the harm.  ¶¶1, 28-37.  The Data Breach occurred for nearly a month and impacted a *significant* number of payment cards.  ¶¶1, 25, 35.

## III.   STANDARD OF REVIEW

On a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Moreover, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014).

## IV.   ARGUMENT

### A.   The Economic Loss Rule Is Not Applicable to Plaintiffs' Negligence Claims[5]

Chipotle's primary argument for dismissal of Plaintiffs' negligence claims is that

---

[4]   Unless otherwise noted, internal citations are omitted and emphasis is added.
[5]   Plaintiffs do not dispute that Colorado law applies to their negligence claims.

Plaintiffs purportedly allege only economic losses, and therefore, the economic loss rule bars these claims because it contends that Plaintiffs failed to allege any legal duties that are independent from the contractual duties Chipotle asserts it owes. This argument lacks merit. Application of the economic loss rule "serves to maintain a distinction between contract and tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000). There is, however, no danger of blurring the line between contract and tort in this case. "Tort law is designed to protect all citizens from the risk of physical harm to their persons or to their property. These duties are imposed by law without regard to any agreement or contract." *Id*. Here, Chipotle created a foreseeable risk of harm to Plaintiffs and the Class by implementing data security measures that it knew were inadequate. This common law tort duty as well as the statutory duty encompassed in Section 5 of the FTC Act ("Section 5") are independent of any contractual duty Chipotle claims it owes. In selectively citing documents outside of the pleadings, Chipotle raises numerous fact issues regarding the scope of the contractual relationship that cannot be resolved at this stage. Construing the allegations as true and in Plaintiffs' favor, Plaintiffs adequately allege independent common law and statutory duties. Plaintiffs also allege property damage. Thus, the economic loss rule is inapplicable.

### 1. Plaintiffs Adequately Allege Chipotle Owed a Legal Duty

Colorado recognizes "every individual owes a duty of ordinary care not to create an unreasonable risk of harm to others." *Laughman v. Girtakovskis*, 374 P.3d 504, 507 (Colo. App. 2015). "The source of the duty and the corresponding standard essential to the proper discharge of the duty may originate from a judicial decision or a legislative enactment." *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992). To determine whether the law imposes a

duty, a court should consider many factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the defendant.  *See Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987).  "No one factor is controlling."  *Id*.  Ultimately, duty is "'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987).

Chipotle accepts credit and debit card payments at its restaurants, ¶17, and thus, it is aware of the need to safeguard Payment Card Data.  ¶¶24-26.  Chipotle also is aware of the threat of cyber-attacks targeting payment card data through vulnerable POS systems.  ¶¶19-26, 43-44, 49-51.  Yet, Chipotle lacked the most basic security features and knew its data security measures were inadequate but refused to implement recommended security enhancements because management decided to minimize costs.  ¶¶32-94, 100, 108, 191.  Plaintiffs and the Class, on the other hand, go to great lengths to protect Payment Card Data and their customers' personal and financial information, as required by law.[6]  ¶¶9-10, 118, 123, 130-31, 133-36. Chipotle's decisions to consciously maintain data security measures it knew were inadequate therefore created an entirely foreseeable and unreasonable risk that the Payment Card Data would be compromised and used to make fraudulent transactions, harming financial institutions, like Plaintiffs.  ¶¶26, 39-94, 100, 108, 126, 151.

---

[6]     Chipotle repeatedly claims that Plaintiffs are required by contract to reimburse their customers for transactions fraudulently made on their payment cards.  Br. at 1, 3, 11.  This is not accurate.  As Plaintiffs allege, there are numerous statutes that require this; the contracts merely conform to the legal requirements.  ¶¶133 & n.58, 151, 165.

Acknowledging that Chipotle has an independent legal duty fulfills the underlying purposes of negligence law – compensation and deterrence – by placing the risk of financial loss on the only entity with the ability to prevent that loss. Absent a duty to protect payment card data, a merchant, such as Chipotle, has a strong incentive to take minimum precautions and shift the burden of protecting consumers' personal and financial information to financial institutions. There is no social utility in this. On the other hand, if an independent legal duty is imposed, merchants will likely implement adequate data security measures to avoid liability. *See In re Arby's Restaurant Group Inc. Litig.*, No. 17-mi-55555, slip op. at 33-34 (N.D. Ga. Mar. 5, 2018) (Declaration of Erin Green Comite ("Comite Decl."), Ex. 1); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016). Recognizing this legal duty imposes no additional burden on merchants; it merely serves to prevent merchants from shirking their responsibilities.

Thus, under the *Taco Bell* factors, Chipotle has a common law duty to avoid creating such foreseeable and unreasonable risk of harm under the alleged facts. Several courts have found merchants such as Chipotle have such an independent duty. *See*, *e.g.*, *Arby's*, slip op. at 6-12 (Georgia law); *Home Depot*, 2016 WL 2897520, at *3 (Georgia law); *First Choice Fed. Credit Union v. Wendy's Co.*, No. CV 16-506, slip op. at 6-7 (W.D. Pa. Feb. 13, 2017) (Comite Decl., Ex. 2), *R&R adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017) (Ohio law); *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1308-10 (D. Minn. 2014) (Minnesota law). In cases of misfeasance, which Plaintiffs allege, even "[a]n intervening act of a third party [like a hacker] does not absolve the defendant from responsibility if that act is reasonably and generally foreseeable." *Ekberg v. Greene*, 588 P.2d 375, 377 (Colo. 1978); *see*

*also* Restatement (Second) of Torts §§448, 449 & 302B & cmt. e; *McDermott v. Midland Mgmt., Inc.*, 997 F.2d 768, 774 (10th Cir. 1993) (Kansas law); *Smit v. Anderson*, 72 P.3d 369, 373 (Colo. App. 2002).[7]   Here, Plaintiffs allege it was foreseeable that hackers would breach Chipotle's inadequately protected POS systems and compromise Payment Card Data.  ¶¶19-27, 126, 151. This is sufficient to plausibly allege a common law tort duty.  *See Arby's*, slip op. at 7-11.  As discussed below in §IV.B, Plaintiffs also sufficiently allege Chipotle has a statutory duty to not engage in unfair trade practices under Section 5.  ¶¶109-13, 157, 163-66.

> **2.     The Alleged Common Law and Statutory Duties Are Independent of Any Claimed Contractual Duty**

In Colorado, the economic loss rule can apply in the context of "interrelated contracts." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).  Chipotle argues the duties Plaintiffs allege are subsumed within the supposedly interrelated contracts Chipotle cites.  Br. at 9-10, 12-13.  Chipotle is wrong.  According to the Colorado Supreme Court, "any general tort duty is independent of contractual duties if the contract contains no duties or the allegedly breached tort duty is beyond the scope of the duties contained within the contract at issue."  *S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Sols. V, LLC*, 342 P.3d 868, 875 (Colo. 2015). Such is the case here where there are various instances where the card brand recovery process that Chipotle describes is not triggered under the cited agreements.  Chipotle, of course, relies heavily on *SELCO Community Credit Union v. Noodles & Co.* ("*Noodles*"), No. 16-cv-02247, 2017 WL 3116335, at *5 (D. Colo. July 21, 2017), which held that the plaintiffs failed to properly plead an independent duty.  As discussed below, the *Noodles* court prematurely

---

[7]     Contrary to Chipotle's argument (Br. at 12-14), no special relationship is required where Plaintiffs plead misfeasance.  *See Smit v. Anderson*, 72 P.3d 369, 372-73 (Colo. App. 2002).

considered the agreements without a complete factual record and thus erred in its conclusion. Plaintiffs' allegations also are different than those in *Noodles*, further distinguishing the case.

As an initial matter, all the facts are not before the Court. Chipotle does not even provide the Court with the agreement that specifically sets forth Chipotle's duties – the one between it and its acquiring bank. Br. at 9. There are many scenarios in which the card brand recovery process is not even available.[8] For example, MasterCard now requires issuers to choose annually whether to participate in the ADC program; those that choose not to participate are not eligible for any reimbursement. Ex. C §10.2.5.3. Should MasterCard determine that an insufficient number of issuers have opted to participate in the ADC program for a particular calendar year, MasterCard will not administer the program and no issuer will receive any reimbursement. Ex. C §10.2.5.3. Also, to the extent an issuer issues magnetic-stripe only cards (*i.e.*, cards that are not also embedded with EMV chip technology), losses stemming from those cards would not be recoverable under the ADC or GCAR programs. *Id.* §10.2.5.5; Ex. A §10.10.1.1. Some members of the Class issued Discover and American Express branded payment cards, and may not have issued Visa or MasterCard branded cards at all. Finally, many data breaches do not constitute events that qualify for inclusion in the card brand recovery process under the card brand rules. Ex. A §10.10.1.1; Ex. C §10.2.5. Thus, there are many factual scenarios where Class members' tort claims would fall outside the scope of the agreements Chipotle claims are

---

[8]     Each major card brand network provides for discretionary recovery processes by which issuers may be partially reimbursed in the event of a qualifying data breach. The card brand recovery processes, such as Visa's Global Compromised Account Recovery ("GCAR") program and MasterCard's Account Data Compromise ("ADC") program, only include compensation for "operational" losses, which focus on partial re-issuance costs, and partial "fraud" losses. Importantly, the card brand recovery processes are not intended to provide full compensation and the agreements do not state that it is the exclusive mechanism for recovery.

applicable.  As a result, the economic loss rule would not bar their negligence claims.  *See*, *e.g.*, *Paquet v. Smith*, 854 F. Supp. 2d 1003, 1011 (D. Colo. 2012) (Martinez, J.) (holding economic loss doctrine inapplicable "[b]ecause contract remedies [were] unavailable" where the plaintiffs were not parties to the contract); *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1194-95 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008); *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 963 (10th Cir. 2009).  Chipotle's reliance on facts not before the Court to refute Plaintiffs' allegations is improper.  Thus, the Court should deny the Motion and allow the parties to pursue discovery to determine the scope of the duties Chipotle has undertaken and the nature of the contractual relationships.  *See S K Peightal Eng'rs*, 342 P.3d at 874; *Tuchman v. Pell Rudman Tr. Co., N.A.*, 245 F. Supp. 2d 1156, 1158 (D. Colo. 2003).

Even if the Court finds it appropriate to examine the agreements, the portions of the card brand rules Chipotle cites do not impose either a duty to avoid creating unreasonable risk of harm or a duty to avoid unfair trade practices.  Plaintiffs allege that mere compliance with only PCI Security Standards, which are a "minimum standard of care," is unreasonable under the circumstances alleged, to avoid creating the entirely foreseeable risk of harm to Plaintiffs and the Class and to not engage in unfair trade practices.  ¶¶23-27, 101-08; *see also* Ex. C §10.1 ("PCI Security Standards are technical and operational requirements established by the Payment Card Industry Security Standards Council (PCI SSC) to act as *a minimum baseline* to protect Account data.").  Indeed, industry experts agree that complying with only PCI Security Standards without doing more is insufficient to prevent a data breach.[9]  Plaintiffs allege that Chipotle did not

---

[9]    *See* Tech Inc., *In Data Security, Compliance Isn't Enough* (Oct. 16, 2014), https://www.techinsurance.com/blog/cyber-security/in-data-security-compliance-isnt-enough/

comply with numerous industry standard best practices known to prevent and timely identify data breaches.   ¶¶4-5, 23-27, 43, 73-74, 78, 80, 84-86, 101-08.   These allegations differentiate this case from *Noodles*, where the plaintiffs did not allege that mere compliance with only PCI Security Standards was unreasonable under the circumstances to discharge its alleged duties. *Compare id. with* Amended Consolidated Class Action Complaint, *SELCO Community Credit Union v. Noodles & Co.*, No. 1:16-cv-02247, ¶103 (ECF No. 27) (D. Colo. Nov. 30, 2016) (Comite Decl., Ex. 3).   As the "minimum" a merchant must do, the PCI Security Standards simply cannot be properly characterized as coextensive with the common law duty to avoid creating unreasonable risk of harm and the statutory duty to avoid unfair trade practices, in light of the foreseeable risks alleged.   *See Arby's*, slip op. at 28-34.   The alleged duties, thus, are not imposed by any agreement.   *See Haynes Trane Serv. Agency*, 573 F.3d at 962-63.

Finally, application of the economic loss rule presumes equal bargaining power and access to information.   *See U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd*., 358 F. Supp. 2d 1021, 1026 (D. Colo. 2005).   These factors were absent here.   Plaintiffs are small community credit unions.   They had no ability to allocate the risk that Chipotle, out of the millions of merchants that accept payment cards, would knowingly maintain inadequate data security measures.   Unlike in *BRW*, Plaintiffs were not able to bargain for an allocation of risks. The facts of this case therefore do not support application of the economic loss rule.   *See AIG*

---

("While PCI standards are undoubtedly helpful, they aren't sufficient to prevent serious data breaches."); Secureworks, White Papers, *PCI DSS Compliance Frequently Asked Questions*, https://www.secureworks.com/resources/wp-pci-dss-compliance-faqs ("PCI compliance alone won't protect corporate data and systems from costly, time-consuming data breaches and advanced threats. PCI compliance should be viewed as the baseline, not the end goal, for any organization.") (last accessed Mar. 9, 2018).

*Aviation Ins. v. Avco Corp.*, 709 F. Supp. 2d 1124, 1130 (D.N.M. 2010).

### 3.   Plaintiffs Have Suffered Property Damage

The economic loss rule also is inapplicable because Plaintiffs have suffered property damage and not "only economic losses." *See U.S. Aviation Underwriters*, 358 F. Supp. 2d at 1026; *Wendy's*, slip op. at 5. Plaintiffs allege the Data Breach rendered their computer database records that contain the components of Payment Card Data commercially worthless for the purpose that data was intended—authorizing payment card transactions. ¶¶116-27. Therefore, Plaintiffs had to replace each computer record, create new payment card database records, and then reissue new plastic cards to affected cardholders. ¶¶121-23. Colorado law recognizes that computer data is "property" that suffers "damage" when it has lost its integrity and been rendered unusable. *See* C.R.S. §18-5.5-101(8); C.R.S. §18-5.5-101(6.3); *see also* ¶124. Courts also recognize electronically stored data to be "property" that can be "damaged," particularly in the insurance law context. *See, e.g.*, *Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-185, 2000 WL 726789, at *2 (D. Ariz. Apr. 18, 2000); *Se. Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*, 439 F. Supp. 2d 831, 837-38, (W.D. Tenn. 2006); *NMS Servs. Inc. v. Hartford*, 62 Fed. Appx. 511, 514 (4th Cir. 2003).

Chipotle's argument that Plaintiffs have not suffered property damage (Br. at 11-12) impermissibly contradicts Plaintiffs' allegations as to the nature of the damaged property and also ignores that damage to "other property" is outside the scope of application of the economic loss rule. *See Haynes Trane Serv. Agency*, 573 F.3d at 962. Here, Plaintiffs' damaged **computer data** was not the subject of any contract. Thus, Plaintiffs' allegations support that Plaintiffs suffered physical harm to property other than that which is the subject of any contract, making

the economic loss rule inapplicable.  *Id.*

The few courts that have rejected the concept that financial institutions suffer property damage in the data breach context (*see* Br. at 12), have not analyzed whether compromised computer data integrity constitutes property damage.   Rather, these plaintiffs attributed their property damage to the physical cards that were destroyed upon being reissued, or to devalued data.  *See Sovereign Bank v. BJ's Wholesale Club, Inc*., 533 F.3d 162, 179-80 (3d Cir. 2008); *In re TJX Cos. Retail Sec. Breach Litig*., 564 F.3d 489, 498 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009); *In re TJX Cos. Retail Sec. Breach Litig*., 524 F. Supp. 2d 83, 90 (D. Mass. 2007); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc*., 918 N.E.2d 36, 47 (Mass. 2009).  None of the conclusory allegations in these cases mention anything about damage to the computer data that resides in financial institution databases.  *Compare* ¶¶116-27 *with* Amended Complaint, *Sovereign Bank v. BJ's Wholesale Club, Inc.*, No. 1:05-cv-01150, ¶35 (M.D. Pa. Nov. 7, 2005) (Comite Decl., Ex. 4); Consolidated Class Action Complaint, *Mass. Bankers Ass'n v. The TJX Cos.*, No. 1:07-cv-10162, ¶¶81-88 (ECF No. 81) (D. Mass. May 23, 2007) (Comite Decl., Ex. 5); Consolidated Class Action Complaint, *Amerifirst Bank v. Fifth Third Bancorp*, No. 1:07-cv-10162, ¶¶57-62 (ECF No. 82) (D. Mass. May 23, 2007) (Comite Decl., Ex. 6).   The plaintiffs in *Noodles* did not allege that their computer data was damaged (Comite Decl., Ex. 3 ¶76), and thus, the court rested its decision solely on whether an independent duty was properly pled.  2017 WL 3116335, at *3-4.   Chipotle's cited cases are not persuasive.  Thus, the Court should not apply the economic loss rule to Plaintiffs' negligence claims.

### B.      Plaintiffs State a Claim for Negligence Per Se

To establish negligence *per se* based on violation of a statute, a plaintiff must show that

she is a member of the class the statute intended to protect and that the injuries suffered were the kind the statute was enacted to prevent.  *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 573 (Colo. 2008).   As in *Arby's*, *Home Depot*, and *Wendy's*, Plaintiffs adequately allege a negligence *per se* claim based on violations of Section 5.  *Arby's*, slip op. at 16-20; *Home Depot*, 2016 WL 2897520, at *4; *Wendy's*, slip op. at 7-8; *see also Bans Pasta, LLC v. Mirko Franchising LLC*, No. 7:13-cv-00360, 2014 WL 637762, at *13-14 (W.D. Va. Feb. 12, 2014) (plaintiff adequately pled negligence *per se* based on FTC Act); *Legacy Acad., Inc. v. Mamilove, LLC*, 761 S.E. 2d 880, 892 (Ga. Ct. App. 2014) (same), *vacated on other grounds*, 777 S.E. 2d 731 (Ga. Ct. App. 2015).

Section 5 imposes a clear duty and standard of conduct in particular as it relates to data security.  ¶¶109-115, 166.  As held in *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015), Section 5 sufficiently "informs parties that the relevant inquiry here is a cost-benefit analysis . . . that considers a number of relevant factors[.]"  *Id.* at 255; *see also id.* at 257-58 (finding that the reasonableness of the defendants' efforts could be measured by industry standards and the Federal Trade Commission's ("FTC") guidelines and consent orders).   Thus, Section 5 provides a sufficient basis for Plaintiffs' claim of negligence *per se*, and the FTC's publications and orders, which carry the force of law (*see FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 620-21 (D.N.J. 2014)), further bolster the duty set forth in the statute.

Courts and the FTC have applied Section 5 to practices harming businesses.  *See, e.g.*, *Bans Pasta*, 2014 WL 637762, at *13; *Legacy Acad.*, 761 S.E. 2d at 892-893; *FTC. v. World Wide Factors, Ltd.*, 882 F.2d 344, 346-47 (9th Cir. 1989); *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 248 (1972).  Plaintiffs also allege that they "bear primary responsibility for directly

reimbursing consumers for fraud losses" and that "many Class members are credit unions, which are organized as cooperatives, whose members are consumers." ¶165. Chipotle harmed both consumers and competition in cutting corners on data security to save money, instead placing the burden on financial institutions, like Plaintiffs, to protect consumers. ¶¶165, 191, 207, 220, 233, 245, 259, 271. Thus, Plaintiffs are within the wide scope of persons the FTC Act protects. *Arby's*, slip op. at 19-20; *Wendy's*, slip op. at 7-8; *Home Depot*, 2016 WL 2897520, at *4. Accordingly, Plaintiffs' negligence *per se* claim is adequately stated.

### C.   Plaintiffs State a Claim for Violation of the DTSA

To state a claim under the DTSA, "[a]ll that is required at this stage of the proceedings is an allegation that [the defendant] misappropriated [the plaintiff's] trade secrets sufficient to put the defense on notice as to the nature of the claim." *Aggreko, LLC v. Barreto*, No. 1:16-cv-353, 2017 WL 963170, at *2 (D.N.D. Mar. 13, 2017). Plaintiffs' allegations more than satisfy this notice requirement.

### 1.   Plaintiffs' Payment Card Data Is Protectable As a Trade Secret

Whether information constitutes a trade secret ordinarily is a question of fact, which generally is not properly decided on a motion to dismiss. *Cf. Gas Prods. Corp. v. BTU Mktg., LLC*, No. 16-cv-02747, 2017 WL 4222619, at *6 (D. Colo. Sept. 22, 2017); *Network Telecommc'ns, Inc. v. Boor-Crepeau*, 790 P.2d 901, 902-03 (Colo. App. 1990) (finding trial court abused its discretion in not holding an evidentiary hearing before ruling on existence of trade secret).[10] Thus, a complaint need only generally describe the alleged trade secret. *See*

---

[10]    "[C]ourts may look to the state UTSA when interpreting the DTSA." *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 797 (W.D. Wis. 2017).

*Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc*., No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017).  Plaintiffs allege their Payment Card Data is protectable under the DTSA as it (1) is financial data; (2) that Plaintiffs have taken reasonable measures to keep secret; and (3) that has independent economic value.  *See*, *e.g.*, *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 522 (Colo. App. 2011) (affirming trial court finding that the plaintiff's "client and debtor information stored within its proprietary database qualified as trade secrets").

The DTSA expressly defines "trade secret" to include "***all forms and types of financial*** . . . information, including . . . ***compilations***."  18 U.S.C.A. §1839(3).  Chipotle, however, mischaracterizes Payment Card Data as a mere "random series of numbers on a debit or credit card [that] is not a secret."  Br. at 18.  This contradicts Plaintiffs' allegations.  Payment Card Data is a unique ***combination*** of information (*i.e.*, cardholder names, account numbers, card expiration dates, card verification values ("CVVs"), and service codes) (¶1) that Plaintiffs allege they devote substantial effort and resources to develop, create, use, and protect.  ¶¶130-31, 133-34.  While some of this data is public (*i.e.*, cardholder name), some of it is not (*i.e.*, CVVs).  Like a customer list, it is the entire compilation of information that constitutes the trade secret.  *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir. 2003).

Chipotle's argument that Payment Card Data is not "secret" because merchants and consumers have access to it is a red herring, because absolute secrecy is not required to establish trade secret status.  *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc*., No. 10-cv-02868, 2013 WL 5437775, at *3 (D. Colo. Sept. 27, 2013).  A plaintiff need only take "reasonable measures" to maintain the information's secrecy.  *Id.*  Plaintiffs allege that they take reasonable steps to protect the secrecy of Payment Card Data.  ¶¶9-10, 130-31, 133 & n.58.  "Courts

recognize that 'the necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another'—such as a licensee or customer—'in confidence, and under an implied obligation not to use or disclose it.'" *L-3 Commc'ns*, 2013 WL 5437775, at *5. Here, Plaintiffs make Payment Card Data known to merchants only for the "limited purposes" of completing payment card transactions, which is permissible under similar statutes. *See* C.R.S. §7-74-102(4); Uniform Trade Secrets Act §1(4)(ii). And, Plaintiffs allege consumers and merchants must keep Payment Card Data confidential. ¶¶16-27. Incredibly, Chipotle disputes this point (Br. at 18-19); however, whether Payment Card Data is secret is a fact question that cannot be resolved on a motion to dismiss. *L-3 Commc'ns*, 2013 WL 5437775, at *2.

Contrary to Chipotle's argument (Br. at 19-20), Plaintiffs also plausibly plead that Payment Card Data has independent economic value to Plaintiffs. Plaintiffs plead that Payment Card Data is a business asset that has significant value (¶¶117-22, 137); indeed, it is the very information that allows Plaintiffs to securely authorize payment card transactions (¶¶116-18, 125) – an activity from which Plaintiffs and all card-issuing financial institutions derive significant income through interchange fees.[11] ¶¶127-28, 137. That Payment Card Data is valuable to Plaintiffs is supported by the fact that it "often is targeted by hackers" who trade Payment Card Data as a commodity on the black market. ¶19.[12] *Cf. Miller v. People*, 566 P.2d

---

[11]    *See*, *e.g.*, MasterCard, *Understanding Interchange*, https://www.mastercard.us/en-us/about-mastercard/what-we-do/interchange.html (last accessed Mar. 9, 2018); Visa, *Interchange Reimbursement Fees*, https://usa.visa.com/support/small-business/regulations-fees.html (last accessed Mar. 9, 2018).

[12]    *See also Business Insider*, November 30, 2015, available at http://www.businessinsider.com/how-much-stolen-credit-card-info-is-worth-to-hackers-2015-11 ("[B]asic details for [payment] cards, which includes the card number and software-generated information, can see an asking price ranging from $5 in the US to $25-30 in Europe.").

1059, 1060 (Colo. 1977) (rejecting argument that credit card had "no value" based on evidence of black market value).  Plaintiffs also allege that once the integrity of Payment Card Data is compromised, the underlying computer data is rendered commercially worthless and must be replaced.  ¶¶119-22, 127.  Therefore, Plaintiffs have sufficiently alleged independent economic value.  *See* Restatement (Third) of Unfair Competition §39, cmt. e (1995) ("It is sufficient if the secret provides an advantage that is more than trivial.").

### 2.  Chipotle Misappropriated Plaintiffs' Payment Card Data

The DTSA defines misappropriation, in relevant part, as the:

> disclosure or use of a trade secret . . . by a person who … **(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was … **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

18 U.S.C.A. §1839(5)(B).  The Restatement (Third) of Unfair Competition calls for a broad reading of this definition.  As to the term "use," it explains:

> There are no technical limitations on the nature of the conduct that constitutes "use" of a trade secret . . . .  As a general matter, ***any exploitation of the trade secret that is likely to result in injury to the trade secret owner*** . . . is a "use[.]"

Restatement (Third) of Unfair Competition §40, cmt. c (1995).  Similarly, regarding the term "disclosure," it states "the unauthorized disclosure need not be express. ***Any conduct by the actor that enables another to learn the trade secret*** . . . is a 'disclosure' of the secret[.]"  *Id*.  The Tenth Circuit also recognizes the breadth of these terms, commenting:

> Can't ***disclosing*** a trade secret . . . be a way of putting it to ***use***, at least in a broad sense of the word? What happens when the disclosure is made to a third party . . . with the intent the third party itself put the trade secret to commercial ***use*** in ways harmful to the secret's owner? Isn't at least ***that*** disclosure a ***use*** of the secret, whether or not the third party takes up the invitation?

*Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1186 (10th Cir. 2014) (emphasis in original).

Plaintiffs allege Chipotle affirmatively decided not to secure the Payment Card Data in a manner that would protect it such that Chipotle effectively disclosed the Payment Card Data.  ¶¶36, 38-94, 100, 108.  Yet, Chipotle argues that it did not misappropriate Plaintiffs' Payment Card Data because it did not "disclose" the data, rather it was "stolen" by hackers.  Br. at 16.  This argument lacks merit because Chipotle fails to recognize that improper "use" of a trade secret also is actionable.[13]  As suggested in *Storagecraft*, it is Chipotle's improper "use" of the Payment Card Data that resulted in the disclosure of Plaintiffs' trade secret, and thus, constitutes misappropriation.  *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, No. 4:17-cv-00025, 2018 WL 701280, at *5-6 (E.D. Va. Feb. 2, 2018); *Musket Corp. v. Star Fuel of Okla., LLC*, 606 Fed. Appx. 439, 451-54 (10th Cir. 2015).

Chipotle's cited case *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974), is distinguishable because the plaintiff accidentally disclosed his own trade secret.  Here, there is no doubt that Chipotle disclosed the information as it came from Chipotle's POS systems. Chipotle's other cited cases also are distinguishable because the statutes at issue, unlike the DTSA, define the term "disclose" to require a willful or intentional disclosure.  *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2016 WL 3029783, at *40 (N.D. Cal. May 27, 2016) (the Federal Privacy Act requires a willful or intentional disclosure); *In re Office of Pers. Mgmt. Data Sec. Breach Litig.*, MDL No. 2664, 2017 WL 4129193 (D.D.C. Sept. 19,

---

[13]    Chipotle's interpretation of the term "disclose" to require an affirmative act is belied by the statutory text.  The DTSA provides that a court may award injunctive relief and damages if the trade secret was misappropriated, 18 U.S.C. §1836(b)(3)(A), (B), and exemplary damages "if the trade secret is ***willfully*** and ***maliciously*** misappropriated."  18 U.S.C. §1836(b)(3)(C).  To read the statute as Chipotle interprets it would render these separate damages provisions superfluous, which is impermissible under canons of statutory construction.  *See, e.g.*, *United States v. La Cock*, 366 F.3d 883, 888 (10th Cir. 2004).

2017) (same); *Fero v. Excellus Health Plain, Inc*., 236 F. Supp. 3d 735, 783 (W.D.N.Y. 2017) (New Jersey, North Carolina and Georgia statutes specifically defined "disclosure" to require willful intent to injure).   Likewise, cases interpreting whether private information has been "furnished" by a credit reporting agency under the Fair Credit Reporting Act should not be persuasive.   The facts of *In re Department of Veterans Affairs (VA) Data Theft Litigation*, MDL No. 1796, 2007 WL 7621261 (D.D.C. Nov. 16, 2007), are also distinguishable where protected information was not directly targeted and exploited due to a defendant's breach of a duty to protect information as envisioned by the DTSA.   Thus, Chipotle's cases are not persuasive and the Motion to dismiss the DTSA claim should be denied.

> **D.     Plaintiffs Adequately Allege Claims for Violations of the State Consumer Protection Statutes**
>
> > **1.     Bellwether Has Standing to Bring Claims for Violation of Consumer Protection Statutes Other Than the NHCPA**

Bellwether has standing to bring claims under the consumer protection statutes of California, Florida, Maine, Massachusetts, and Vermont, by alleging "a causal connection between [its] alleged injury and wrongful conduct that implicates each state's laws." *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1200 (D.N.M. 2016).   Chipotle argues Bellwether lacks standing to bring these claims because Bellwether has not suffered an injury in any state other than New Hampshire.   This impermissibly contradicts the Complaint's allegations.   In *In re Flonase Antitrust Litig*., 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010) and *In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 156-157 (E.D. Pa. 2009), third-party payors that reimbursed their members for drugs at fraudulently inflated prices were held to have standing to sue under the laws of the states where the members' purchases occurred.   Bellwether's injury is

identical to that suffered by the third-party payors in *Flonase* and *Wellbutrin*. As to each statewide class, Bellwether alleges Chipotle's lax data security measures extended to its California, Florida, Maine, Massachusetts, and Vermont restaurants, where Chipotle's inadequately protected POS systems were located, where the payment card transactions took place, and where Bellwether was injured when it reimbursed its members – California, Florida, Maine, Massachusetts, and Vermont consumers – for fraudulently incurred losses that they would not have suffered but for Chipotle's unfair or otherwise unlawful conduct. ¶¶208, 221, 234, 247, 272. Because Plaintiff alleges it was harmed due to Chipotle's state-specific misconduct and injured in these states, it adequately pleads a concrete and particularized injury sufficient for standing to sue under each state's consumer protection statute, which differentiates this case from *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2011 WL 2791331 (D. Colo. July 14, 2011), where the court held the plaintiff lacked standing because the plaintiff "ha[d] not suffered an injury under [the relevant states'] laws." *Id.* at *7-8.

## 2. Bellwether Adequately Alleges Chipotle Violated the NHCPA

Chipotle incorrectly claims its alleged misconduct is not actionable under the NHCPA. The NHCPA expressly states that the enumerated list of prohibited conduct is not exhaustive. *See* RSA §358-A:2. To determine whether a non-enumerated act is prohibited under the NHCPA, "the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *State v. Moran*, 151 N.H. 450, 452 (2004). Furthermore, the New Hampshire Supreme Court has directed that in "determining what actions are unlawful outside of the enumerated categories of" the NHCPA, courts should "look to the federal courts' interpretation of the Federal Trade Commission act for

guidance." *Id.* at 452-53; *see also* N.H. Rev. Stat. §358-A:13.  Section 5 creates a legal duty to refrain from engaging in unfair acts, and the FTC considers the use of inadequate data security practices violative of Section 5.  *See Wyndham*, 799 F.3d at 255, 257-58.  Chipotle's conduct also undermined New Hampshire public policy that personal and financial information be protected from disclosure, as reflected in N.H. Rev. Stat. §359-C:2 (which distinguishes this case from Chipotle's cited cases (Br. at 24)).  ¶256.  That Chipotle knew its data security measures were inadequate and cut corners to save money, which foreseeably placed the burden on financial institutions to protect consumers (¶¶257-59), is "objectionable conduct" that satisfies the rascality test.  *Moran*, 151 N.H. at 452.[14]

### 3.   Bellwether Adequately Alleges Its Entitlement to Injunctive Relief and Restitution under California's UCL

Contrary to Chipotle's assertions, Bellwether has standing to pursue injunctive relief and has adequately alleged its entitlement to restitution under the UCL.  To have standing to pursue injunctive relief, a "plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."  *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).  "Past injuries are relevant to showing a risk of future harm[.]"  *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017).  Bellwether suffers a "continuing injury," where "Plaintiffs and the Class continue to suffer injury as additional fraudulent charges are being made on payment cards issued to Chipotle customers." ¶277; *see also* ¶¶9, 127-28.  Bellwether also alleges that Chipotle's data security measures were

---

[14]     Chipotle misstates the relevant legal standard, asserting that Bellwether must allege an act "of the same type" as those enumerated by the NHCPA ***and*** meet the rascality test.  Br. at 23-24.  The misconduct, however, need ***only*** satisfy the rascality test.  *See Moran*, 151 N.H. at 453.

inadequate, remain inadequate, and that Chipotle has suffered other data breaches in the past. ¶¶9, 128, 208, 210, 280.  Therefore, it is plausible that the risk of another such data breach is real, immediate, and substantial, and that Bellwether, which has members in California who presently patronize Chipotle, will be harmed again.  *Id.*  Chipotle's contradictory factual assertions are no basis for dismissal.  *See Wendy's*, slip op. at 10; *Home Depot*, 2016 WL 2897520, at *4; *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017).

Chipotle claims Bellwether is not entitled to restitution because it "does not seek to recover property that it gave to Chipotle."  Br. at 26.  This is an overly formalistic view of restitution.  *See In re Anthem*, 2016 WL 3029783, at *32 (rejecting direct payment argument). Bellwether allowed Chipotle to use Bellwether's Payment Card Data to complete transactions from which Chipotle profited, and relied on Chipotle to securely maintain that Payment Card Data in the course of the payment card transaction process.  ¶¶17, 116-21, 108, 206.  Chipotle's inadequate data security measures caused the Payment Card Data, which Bellwether owns and has a property interest in, to be rendered commercially worthless.  ¶¶119-22, 127.  Thus, Bellwether was deprived of the benefit of its bargain with Chipotle to securely engage in the payment card transaction process, which caused Bellwether to suffer diminution in the value of the Payment Card Data, entitling it to restitution.  *See*, *e.g.*, *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *15 (N.D. Cal. July 28, 2017).  Furthermore, in shirking its statutory duties to protect personal and financial information (as reflected in Article I, Section 1 of the California Constitution, Cal. Bus. & Prof. Code §22578, Cal. Civ. Code §1798.1, Cal. Civ. Code §§1798.81.5(a)(1) & (b) (¶¶203-04)), Chipotle saved money on its data security expenses

and therefore benefited from its unfair practice of implementing insufficient data security measures; at the same time, it placed the burden of preventing consumer fraud on Bellwether and other financial institutions.  ¶¶7, 9-10, 127, 207.  Chipotle, therefore, is required to return the money it saved in refusing to upgrade and enhance its data security to the financial institutions, like Bellwether, that ultimately were forced to protect their mutual customers.  *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 986 (N.D. Cal. 2016); *Rosales v. Citibank, Fed. Sav. Bk.*, 133 F. Supp. 2d 1177, 1180-81 (N.D. Cal. 2001); *Givemepower Corp. v. Pace Compumetrics, Inc.*, No. 07cv157, 2007 WL 2345027, at *14 (S.D. Cal. Aug. 14, 2007).

### 4. FDUTPA Applies to Chipotle's In-State Misconduct that Rendered Bellwether's Computer Data Commercially Worthless

Contrary to Chipotle's contention that FDUTPA protects only in-state residents, "[n]othing in the language of the statute suggests that it is limited to transactions involving Florida consumers." *Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV, 2013 WL 4047016, at *10 (S.D. Fla. Aug. 9, 2013); *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *5-6 (S.D. Fla. May 2, 2012).  As long as the "offending conduct occurred predominantly or exclusively in Florida," out-of-state plaintiffs are permitted to sue under FDUTPA. *Karhu*, 2013 WL 4047016, at *9.  Here, the putative Florida class is limited to financial institutions that either are located in Florida or have customers with impacted payment cards located in Florida.  ¶¶141, 221.  Bellwether alleges Chipotle's lax data security extended to its Florida restaurants where the inadequately protected POS systems were located.  ¶¶216-17, 219.  The compromised personal and financial information belonged to Florida consumers, and Florida-based financial institutions suffered damages there when they reimbursed consumers for fraudulent transactions and incurred additional operational costs.  ¶¶114, 218, 220-21.  As such,

Bellwether can assert claims under FDUPTA.

Next, Chipotle wrongly claims Bellwether is unable to allege "actual damages" in the form of "diminished value damages because Chipotle sold nothing to it." Br. at 27-28. This narrow definition of actual damages has been strongly criticized. *See Dorestin v. Hollywood Imports, Inc*., 45 So. 3d 819, 825–30 (Fla. Dist. Ct. App. 2010) (Gross, C.J., concurring); *see generally* David J. Federbush, *Damages Under FDUTPA*, 78 Fla. B.J. 20 (2004). Importantly, that "Chipotle sold nothing" directly to Bellwether is irrelevant because privity is not required under FDUTPA. *See Barnext Offshore,* 2012 WL 1570057, at *10. Bellwether alleges Chipotle's inadequate data security measures rendered Bellwether's computer data "commercially worthless." ¶121. This constitutes property damage. *See supra* §IV.A.3. Thus, Bellwether has adequately alleged it "has suffered a loss" to support a claim for actual damages under FDUTPA. *Cf. Teggerdine v. Speedway LLC*, No. 8:16-cv-3280-T-27TGW, 2017 WL 2105224, at *2 (M.D. Fla. May 12, 2017); *Glob. Tech Led, LLC v. Hilumz Int'l Corp*., No. 2:15-cv-553, 2017 WL 588669, at *9 (M.D. Fla. Feb. 14, 2017) (citing cases); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009). Even if Bellwether were unable to recover under FDUTPA's damages provision, Chipotle does not dispute Bellwether is entitled to seek injunctive or declaratory relief under §501.211(1). *See Smith v. Wm. Wrigley Jr. Co*., 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009).

### 5.   Chipotle Engaged in Consumer Fraud in Violation of Both the Maine and Vermont Consumer Protection Statutes

Chipotle wrongly argues that Bellwether is not entitled to sue under Maine and Vermont's consumer fraud statutes. Br. at 28. Contrary to Chipotle's contention, the VCFA broadly defines "consumer" to include "a person who . . . agrees to pay consideration for goods

or *services* . . . in connection with the operation of his or her business."  Vt. Stat. Ann. tit. 9, §2451a(a).  Bellwether, as an active participant in the payment card transaction process, certainly fits this definition.  *See Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003).  The Vermont Supreme Court distinguished *Sullivan v. Allstate Ins. Co.*, No. 5:09-cv-123, 2010 WL 3323726, at *7 (D. Vt. Aug. 3, 2010), in *Elkins v. Microsoft Corp.*, 817 A.2d 9, 12-13 (Vt. 2002), when it held that the VCFA contains no privity requirement; thus *Sullivan* does not support Chipotle's position that Bellwether must have purchased something from Chipotle to state a VCFA claim.

Chipotle also suggests Bellwether cannot sue under MUTPA because Bellwether did not make a purchase from it "primarily for personal, family or household purposes."  Br. at 28.  The Court should reject such a narrow interpretation because MUTPA broadly proscribes "[u]nfair methods of *competition* and unfair or deceptive acts or practices in the conduct of any trade or commerce."  5 M.R.S.A. §207.  Bellwether provided payment cards to its members *for their personal use* to facilitate transactions with businesses like Chipotle (¶234), and Chipotle's unfair conduct harmed both consumers and competition.  ¶¶231-34.  MUTPA expressly is intended to be construed in accordance with interpretations given to Section 5, *see* 5 M.R.S.A. §207, which permits businesses to sue.  *See supra* §IV.B.  Importantly, Bellwether alleges that Chipotle's conduct undermined Maine public policy that personal and financial information be protected from unauthorized disclosure, as reflected in 10 M.R.S.A. §1347-A.  ¶231.  Furthermore, other courts that have interpreted similar statutory language have done so broadly, allowing legal entities to assert claims on behalf of personal users.  *See*, *e.g.*, *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1037 (N.D. Cal. 2007) (court found

that under the Indiana Deceptive Consumer Sales Act, "a sale to a corporation 'for purposes that are primarily personal' qualifies as a consumer transaction within the meaning of the statute."); *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 326 (E.D. Pa. 2011) (same, construing Pennsylvania's Unfair Trade Practices and Consumer Protection Law).   As such, Bellwether should be permitted to sue under MUTPA.

### 6.     Bellwether Adequately States a Claim under Chapter 93A

Chipotle argues that Bellwether failed to comply with the presuit notice requirement under Section 9 of Chapter 93A.   Br. at 28-29.   Bellwether's claim, however, is brought under Section 11 (*see* ¶241), to which Section 9's presuit notice provision does not apply.   *See Nader v. Citron*, 360 N.E. 2d 870, 874 (Mass. 1977).

Chipotle next argues that Bellwether has not adequately alleged wrongful acts in Massachusetts.   Chapter 93A, Section 11 requires that the unfair trade practices have occurred "primarily and substantially within" Massachusetts.   Mass. Gen. Laws ch. 93A, §11.   The focus is on "the center of gravity of the circumstances that give rise to the claim[.]"   *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E. 2d 787, 799 (Mass. 2003).   "The burden is on [Chipotle] to prove that the alleged unfair or deceptive trade practices did not occur primarily or substantially within Massachusetts."   *In re TJX*, 524 F. Supp. 2d at 93.   This determination is best made "after making findings of fact, and [ ] considering those findings in the context of the entire . . . claim."   *Kuwaiti Danish*, 781 N.E. 2d at 799.   Therefore, courts generally reject motions to dismiss on this ground, "so long as the complaint alleges that the plaintiff is located, and claims an injury in Massachusetts."   *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010).

Similar to the certified Massachusetts class in *In re Pharm. Indus. Average Wholesale Price Litig.* ("*AWP*"), 582 F.3d 156, 162 & nn. 4-5 (1st Cir. 2009), the putative Massachusetts class here is limited to financial institutions that either are located in Massachusetts or have customers with affected payment cards located in Massachusetts.  ¶¶141, 247.  Bellwether's allegations demonstrate that "the center of gravity of the circumstances that give rise to" Bellwether's Chapter 93A unfairness claim is in Massachusetts, where Bellwether alleges that as to the Massachusetts class: (1) Chipotle's unfair conduct intended to and did impact payment card transactions at Chipotle restaurants located in Massachusetts; (2) the breached POS systems also were located in Massachusetts; (3) the sensitive personal and financial information that Chipotle caused to be compromised belonged to Massachusetts consumers; and (4) Massachusetts-based financial institutions suffered damages there when they reimbursed consumers for fraudulent transactions and incurred additional operational costs in reissuing payment cards.  ¶¶47, 246.  Chipotle's reliance on *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, No. 11-10807, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014), is misplaced because the plaintiff failed to allege a single deceptive act that occurred in Massachusetts.   In short, Chipotle's unfair acts interfered with commerce and competition in Massachusetts, caused substantial injury to consumers and businesses in Massachusetts, and undermined Massachusetts public policy that protects personal and financial information, as reflected in Mass. Gen. Laws. Ch. 93H, §2, 201 CMR 17.00, and Section 5.  ¶¶242-46.

### 7.     Alcoa Adequately Alleges an Unconscionable Trade Practice under the ADTPA

Chipotle's lack of data security in itself constitutes an unfair trade practice. Yet, Chipotle argues its conduct is not unconscionable because Alcoa's allegations purportedly do not relate to

the "improper application of economic leverage." Br. at 21. An unconscionable act is that which "affront[s] the sense of justice, decency, or reasonableness," and which specifically "includes conduct violative of public policy or statute." *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 & n.6 (Ark. 2006). For its own economic benefit and to the detriment of consumers and competition, Chipotle willfully implemented inadequate data security measures (¶¶38-94, 187-88, 193), which undermined Arkansas public policy that businesses protect personal and financial information, as reflected in Ark. Code Ann. §4-110-102. ¶¶187-91. In particular Chipotle cut corners and saved money, instead placing the burden on financial institutions, like Alcoa, to protect consumer personal and financial information by, among other things, increasing fraud monitoring for its members. ¶¶10, 38-94, 100, 108, 127, 191. Because Chipotle is solely responsible for securing its networks to protect Payment Card Data when in its custody, there is no way Alcoa could have known about Chipotle's inadequate data security practices or avoided the injuries it sustained. ¶¶190-91. Thus, Alcoa has sufficiently alleged conduct that relates to the "improper application of economic leverage" and violates Arkansas public policy. *See Burns v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:14-CV-02208, 2015 WL 11117157, at *3 (W.D. Ark. Apr. 23, 2015); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377, at *23 (N.D. Cal. Oct. 2, 2014); *Pruitt v. Sw. Energy Co.*, No. 4:12-CV-00690, 2013 WL 588998, at *5 (E.D. Ark. Feb. 13, 2013).

Chipotle argues Alcoa cannot allege an "actual financial loss" because "Alcoa bought nothing from Chipotle." Br. at 20. Chipotle, however, applies the wrong version of the statute,

and only "actual damage or injury" is required.[15]   Further, Section §4-88-113(f) does not require

Alcoa to have purchased something from Chipotle, but only that the harm be proximately caused

by Chipotle's unconscionable trade practices.  *Smith v. SEECO, Inc*, No. 4:14-CV-00435, 2017

WL 4570320, at *13 (E.D. Ark. Mar. 21, 2017); *Wallace v. XTO Energy, Inc.*, No. 4:13-cv-

00608, 2014 WL 4202536, at *3 (E.D. Ark. Aug. 22, 2014); *Vanoven v. Chesapeake Energy

Corp.*, No. 4:10CV0158, 2011 WL 1042251, at *5 (E.D. Ark. Mar. 22, 2011).   Alcoa alleges

Chipotle's inadequate data security measures rendered Alcoa's computer data "commercially

worthless."  ¶121.  This constitutes property damage, *see supra* §IV.A.3, and Alcoa incurred out-

of-pocket costs proximately caused by Chipotle's unconscionable trade practices.  ¶¶10, 127,

192.  Finally, Chipotle's claim that class relief is not available under the ADTPA must be

rejected under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398-400

(2010), where five justices agreed that Rule 23 controls whether a class action can proceed in

federal court.  *See also Mounce*, 2017 WL 4392048, at *7 & n.4.

### E.     Plaintiffs State a Claim under the Declaratory Judgment Act

While "a naked declaratory judgment claim, untethered to any live controversy, states no

cause of action," *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, No. 15-cv-0467-WJM-

---

[15]      Effective August 1, 2017, the Arkansas legislature amended §4-88-113(f) such that a plaintiff now must plead "an actual financial loss," as opposed to "actual damage or injury." *Mounce v. CHSPSC, LLC*, No. 5:15-CV-05197, 2017 WL 4392048, at *6 (W.D. Ark. Sept. 29, 2017).  Under Arkansas law, "[b]ecause the amendment is substantive, it should only be given prospective effect[.]"  *Id.* at *7.  Because Alcoa's legal rights under ADTPA vested prior to August 1, 2017 (*i.e.*, in March 2017, when the Data Breach occurred), the pre-amendment version of §4-88-113(f) should apply.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 285 (1994); *Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 662 (8th Cir. 2018).  However, the result is the same even if the amended version applies, because Alcoa has alleged an out of pocket loss.  *See* Ark. Model Jury Instr., Civil AMI 2900 (under the amendment, "the appropriate measure of damages is out-of-pocket loss").

KMT, 2016 WL 8234667, at *5 (D. Colo. Sept. 13, 2016), Plaintiffs' claim is the prototypical declaratory judgment claim based on a clear dispute over the parties' rights.  *See United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1151 (10th Cir. 1974) (finding substantial controversy where past and ongoing misconduct alleged).[16]  Plaintiffs allege Chipotle's current data security practices remain inadequate, which Chipotle denies.  ¶¶9-10, 127-28, 277-78.  Plaintiffs further allege there is a real, immediate, and substantial risk of another data breach and resultant future harm for which Plaintiffs will not have an adequate legal remedy.  ¶¶9-10, 128, 280-82.  Thus, Plaintiffs seek a declaration that Chipotle presently employs unreasonable data security measures and that Chipotle must implement specified data security measures to protect Plaintiffs' Payment Card Data.  ¶¶278-79.  Such allegations are sufficient at the pleading stage.  *See Arby's*, slip. op. at 35-36; *Wendy's*, slip op. at 9-10; *Home Depot*, 2016 WL 2897520, at *4-5.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion.

DATED: March 9, 2018

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Joseph P. Guglielmo*

Joseph P. Guglielmo
Carey Alexander
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

---

[16]   Chipotle's cited cases do not support its contention that Plaintiffs' Declaratory Judgment Act claim is not an independent claim.  In *CCPS Transp., LLC v. Sloan*, 611 Fed. Appx. 931, 933 (10th Cir. 2015), the court merely found that the plaintiff improperly "denominated the three separate remedial requests (declaratory relief, an injunction, and damages) as separate 'claims'," instead of as a single declaratory judgment count.  In *Savant Homes, Inc. v. Collins*, No. 13-cv-2049-WJM-MEH, 2015 WL 899302, at *2-10 (D. Colo. Feb. 27, 2015), the dismissal of the declaratory judgment count was based on the lack of a live controversy since the other claims on which the declaratory judgment claim was based were dismissed.

Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
Colchester, CT  06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Arthur M. Murray
Caroline W. Thomas
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  504-525-8100
Facsimile:  504-584-5249
amurray@murray-lawfirm.com
cthomas@murray-lawfirm.com

*Interim Co-Lead Counsel for Plaintiffs*

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone:  612-339-7300
Facsimile:  612-336-2940
bbleichner@chestnutcambronne.com

Gary F. Lynch
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15212
Telephone:  412-322-9243
Facsimile:  412-231-0246
glynch@carlsonlynch.com

Karen H. Riebel
Kate M. Baxter-Kauf
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone:  612-339-6900
Facsimile:  612-339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

Karen S. Halbert
Michael L. Roberts
Jana K. Law
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, AR 72223
Telephone:  501-821-5575
Facsimile:  501-821-4474
karenhalbert@robertslawfirm.us
mikeroberts@robertslawfirm.us
janalaw@robertslawfirm.us

Brian C. Gudmundson
**ZIMMERMAN REED, LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

*Plaintiffs' Executive Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, the foregoing document was filed using the Court's CM/ECF system, which will automatically generate electronic service upon registered counsel for all parties.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo